**THOMPSON v. FEDEX GROUND/RPS, INC.**

[217 N.C. App. 126 (2011)]

ANITA THOMPSON, Employee, Plaintiff v. FEDEX GROUND/RPS, INC., Employer, CRAWFORD & COMPANY, Third-Party Administrator, Defendants

No. COA11-448

(Filed 15 November 2011)

## 1. Workers' Compensation—presumption of continuing disability—not applicable

A workers' compensation plaintiff with a back injury was not entitled to a presumption of continuing disability related to alleged mysofascial pain syndrome and fibromyalgia where defendant's admission of compensability related only to back issues arising from plaintiff's accident and did not relate in any way to plaintiff's alleged mysofascial pain syndrome and fibromyalgia. The Industrial Commission's prior award was also clearly unrelated to plaintiff's alleged mysofascial pain syndrome and fibromyalgia.

## 2. Workers' Compensation—back injury—mysofascial pain and fibromyalgia—symptoms psychologically induced

There was competent evidence to support the Industrial Commission's findings of fact that a workers' compensation plaintiff's symptoms were psychologically induced and not related to her accident and back injury, and the findings supported the conclusion that plaintiff had failed to prove that any continuing disability or inability to earn wages was related to her injury by accident.

Appeal by plaintiff from opinion and award entered 27 January 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 September 2011.

*Hardison & Cochran PLLC, by Benjamin T. Cochran and John P. Godwin, for plaintiff-appellant.*

*McAngus, Goudelock & Courie, P.L.L.C., by Jason C. McConnell, for defendant-appellees.*

STEELMAN, Judge.

Where there was no prior award by the Commission of disability relating to plaintiff's alleged mysofascial pain syndrome and fibromyalgia and defendants' lack of any admission relating thereto, we hold that plaintiff was not entitled to a presumption of continuing

disability. Where there was competent evidence to support the trial court's finding that plaintiff's alleged fibromyalgia and mysofascial pain syndrome were psychologically induced, the trial court did not err in finding those conditions to be unrelated to plaintiff's 16 December 2000 injury by accident.

## I.  Factual and Procedural History

On 16 December 2000, Anita Thompson (plaintiff) was employed by Federal Express Ground as a manager in training. Plaintiff was returning from a business trip when she sustained a compensable injury by accident involving her back and neck while lifting luggage out of the trunk of a rental car. Plaintiff returned to work part-time for a short period following the accident, but has not worked after that time. On 8 August 2001, Federal Express Ground along with its third-party administrator, Crawford & Company, (collectively defendants) accepted the compensability of plaintiff's claim by filing a Form 60, which stated that plaintiff sustained an injury by accident to her back on 16 December 2000 and that her disability began on 22 May 2001.

Dr. Raphael Orenstein was plaintiff's treating physician following her accident. Plaintiff's complaints of pain continued to worsen, and even with the results of an MRI scan, Dr. Orenstein was unable to determine the source of plaintiff's pain. When plaintiff did not respond to conservative treatment, which included physical therapy, medication, and chiropractic care, Dr. Orenstein recommended she attend an interdisciplinary pain program designed to change a patient's attitude toward pain. As a result of this recommendation, plaintiff underwent a psychological evaluation with Dr. Scott Sanitate on 11 April 2001. Dr. Sanitate found plaintiff's pain to be psychological and not physiological in nature. Plaintiff requested a referral for a second opinion with an osteopath. When Dr. Orenstein refused to refer plaintiff to an osteopath, she found one through the Internet. Plaintiff started seeing Dr. Thomas Motyka, an osteopathic consultant with UNC hospitals on 24 April 2001. Dr. Motyka diagnosed plaintiff with fibromyalgia and myofascial pain syndrome.

In response to a Form 33 request for hearing filed by plaintiff following defendants' refusal to pay for Dr. Motyka's treatment, the Full Commission filed an opinion and award on 1 September 2004 awarding plaintiff temporary total disability and requiring defendants to pay for medical expenses resulting from her back injury. The Commission only required defendants to pay for Dr. Motyka's care for the limited period from 24 April 2001 through 26 June 2001. Plaintiff appealed to

this Court. This Court affirmed the Full Commission in *Thompson v. Federal Express Ground*, 175 N.C. App. 564, 569, 623 S.E.2d 811, 814 (2006), holding that "[s]ince plaintiff failed to obtain the Commission's approval of Dr. Motyka within a reasonable time, defendants were not required to pay for her treatments with Dr. Motyka from 27 June 2001 until 8 August 2001" (the time period between when Dr. Orenstein's retroactive approval of Dr. Motyka's treatment ended and when defendants admitted liability by filing a Form 60).

On 6 January 2005, the Commission entered an order designating Dr. Veeraindar Goli plaintiff's authorized treating physician.

On 29 October 2007, plaintiff filed a Form 33 request for hearing to resolve disputes over whether or not plaintiff's alleged myofascial pain syndrome and fibromyalgia, including her vision and oral problems, were causally related to her 16 December 2000 injury by accident, and if so, to what compensation she was entitled. In an opinion and award entered by the Full Commission on 27 January 2011, the Commission held that the Commission's 1 September 2004 opinion and award "concluded that plaintiff [was] entitled to have defendants pay for all medical treatment related to her compensable back injury which may provide relief." However, the Commission held that the opinion and award of 1 September 2004 "did not find that plaintiff's alleged fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith, were causally related to her December 16, 2000 injury by accident, and did not specifically hold that plaintiff was entitled to have defendants pay for medical treatment for her alleged fibromyalgia, mysofascial pain syndrome, or the vision problems she associates therewith." Based upon these findings the Commission concluded that "[p]laintiff has failed to prove that her fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith are the direct and natural result of, or are causally related to, her December 16, 2000 injury by accident." The Commission further concluded that "[p]laintiff has failed to prove that any continuing disability or inability to earn wages is related to her December 16, 2000 injury by accident."

Plaintiff appeals.

## II.  Standard of Review

"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Clark v. Wal-Mart*, 360

N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citation omitted). "[I]f there is competent evidence to support the findings, they are conclusive on appeal even though there is plenary evidence to support contrary findings." *Oliver v. Lane Co.*, 143 N.C. App. 167, 170, 544 S.E.2d 606, 608, (2001) (citation omitted).

### III.  Presumption of Disability

[1] In her first argument, plaintiff contends that the Industrial Commission erred by failing to hold that there exists a presumption of disability for the plaintiff in light of a prior award of disability by the Commission, and as a subpart to this argument contends that defendants have failed to rebut this presumption. We disagree.

> In *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 599 S.E.2d 508 (2004), this Court expressly stated that "a pre-sumption of disability in favor of an employee arises only in limited circumstances." *Id.* at 706, 599 S.E.2d at 512. Those limited circumstances are (1) when there has been an executed Form 21, "AGREEMENT FOR COMPENSATION FOR DISABILITY"; (2) when there has been an executed Form 26, "SUPPLEMENTAL AGREEMENT AS TO PAYMENT OF COMPENSATION"; or (3) when there has been a prior disability award from the Industrial Commission. *Id.* Otherwise, the burden of proving "disability" remains with plaintiff, even if the employer has admitted "compensability."

*Clark*, 360 N.C. at 44, 619 S.E.2d at 493.

Plaintiff argues that the 1 September 2004 opinion and award by the Commission constituted a prior disability award by the Commission entitling her to a presumption of disability. However, the prior award of disability did not address any disability related to plaintiff's alleged myofascial pain syndrome and fibromyalgia, which is the subject of the instant appeal. In the 1 September 2004 award the Commission found as fact that Dr. Motyka diagnosed plaintiff with mysofascial pain syndrome and fibromyalgia, and then went on to find that:

> Dr. Orenstein disagreed with Dr. Motyka's diagnosis of fibromyalgia, though they both agreed plaintiff would respond better once the workers' compensation claim was over. He also disagreed with Dr. Motyka because he felt plaintiff had reached maximum medical improvement. He later gave the opinion that in retrospect the treatment provided plaintiff by Dr. Motyka for the lim-

ited period from April 24, 2001 through June 26, 2001 was not necessarily inconsistent with the type of chiropractic treatment he had recommended and thus, was reasonable and necessary.

Based on its findings of fact the Commission made the following conclusion of law in its 1 September 2004 award:

Plaintiff is entitled to have the defendants pay for all medical treatments that **are related to her compensable back injury** so long as such treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. This includes reimbursement of past medical expenses plaintiff has incurred that have not been paid by defendants for Dr. Motyka's treatment, **but only for the period from April 24, 2001** through June 26, 2001. N.C. Gen. Stat. § 97-25.

(emphasis added).

Plaintiff's original injury of 16 December 2000 was admittedly compensable; however, this admission and the findings and conclusions of the Commission in its 1 September 2004 award relate only to the compensable back injury and disability clearly arising therefrom. The North Carolina Supreme Court has held in the past that "[t]he Commission erred in presuming plaintiff was disabled merely as a result of her receipt of ongoing benefits arising from defendants' admission of compensability." *Clark*, 360 N.C. at 44, 619 S.E.2d at 493. Defendants' admission of compensability related only to the back issues arising from the 16 December 2000 accident, but did not relate in any way to plaintiff's alleged mysofascial pain syndrome and fibromyalgia. The Commission's 1 September 2004 award was also clearly unrelated to plaintiff's alleged mysofascial pain syndrome and fibromyalgia. Rather, the award focused on plaintiff's medical treatment, and was limited to treatment related to her back injury and specifically excluded treatment by Dr. Motyka beyond a limited period. Defendants were required to pay only for the treatment by Dr. Motyka from 24 April 2001 through 26 June 2001. This only involved a limited type of chiropractic care, and clearly excluded other treatment by Dr. Motyka, which may have involved treatment for plaintiff's alleged mysofascial pain syndrome and fibromyalgia. Based upon the lack of any prior award by the Commission of disability relating to plaintiff's alleged mysofascial pain syndrome and fibromyalgia, and defendants' lack of any admission relating thereto, we conclude that plaintiff was not entitled to a presumption of continuing disability based upon the Commission's opinion and award of 1 September 2004.

Because we hold that plaintiff was not entitled to a presumption of continuing disability, we do not address the second part of plaintiff's argument asserting that defendants have failed to rebut a presumption of disability.

This argument is without merit.

## IV. Findings of Fact and Conclusions of Law

[2] In her second argument, plaintiff contends the Commission erred in finding that her alleged fibromyalgia was not related to the 16 December 2000 compensable injury. We disagree.

The Commission made the following findings:

31. The Full Commission finds that the greater weight of the competent, credible evidence shows that plaintiff's ongoing problems are almost entirely self-induced, psychologically related conditions that are not the direct and natural result of, or causally related to, her December 16, 2000 injury by accident.

32. Plaintiff has failed to prove that her fibromyalgia, myofascial pain syndrome, or the vision problems she associates therewith are the direct and natural result of, or causally related to, her December 16, 2000 injury by accident.

As stated in Section II of this opinion, we review the award of the Commission to determine whether the findings of fact are supported by competent evidence. *Clark*, 360 N.C. at 43, 619 S.E.2d at 492 (citation omitted). We hold that these findings are supported by competent evidence.

Dr. Orenstein testified as follows:

Q Okay. And just to follow up, within a reasonable degree of medical certainty, can you state that [plaintiff] suffers either from the condition of fibromyalgia or myofascial pain syndrome?

A Based on my review of the notes and what I described back in July 2004 and previously, I would say no.

Dr. Sanitate testified as follows:

Q Now going down to the impression section [of Dr. Sanitate's report from his 2001 exam of plaintiff]; if you could read the first impression that you noted there?

A I stated non-organic symptom magnified physical exam. I am unable to corroborate her described injury with her pre-

sent complaints. She denies any other underlying psychosocial stressors at work or at home. The diffuse nature of her present symptoms suggests a psychiatric source unrelated to her work injury.

Q  And that was your opinion as of the April 11, 2001, examination?

A  Correct.

. . . .

Q  [I]t was still your opinion as of April 2001 that [plaintiff] did not suffer from fibromyalgia, is that correct?

A  I really felt there was more of a psychiatric origin or component to the presentation that she had had on both occasions.

Q  And was there anything that revealed itself during the April of 2007 examination which changed your opinion?

A  Like I said, it was just more of an extreme presentation based on the things that she brought to the visit.

Q  And if you could turn to page four of your report [relating to the 2007 exam] under your impression section; if I could just ask you to read again the first paragraph there under number one?

A  Okay. Non-organic neuromusculoskeletal exam. I stated in my last dictation from April of 2001 I feel that her symptom complex is more consistent with a psychiatric original [sic] and I am unable to attribute her diffuse complaints to a lifting injury from December of 2000. The degree to which she has become consumed with her research multi-system involvement of fibromyalgia has defined her.

This was the most peculiar presentation I have ever witnessed. The quantity of assisted devices/apparatus was extreme and included a motorized cart, net covering her upper body, seating cushion, cane, ear plugs, surgical mask, latex gloves, and Jobst stockings. It appeared to have provided her an identity and I do not feel that they are medically necessary. She provided references regarding physicians treating fibromyalgia in a page from a source describing a soleus—which is one of your calf muscles—trigger point referring pain to the jaw. She reported this during her examination.

This testimony constitutes competent evidence to support the Commission's findings of fact that plaintiff's symptoms are psychologically induced and not related to her 16 December 2000 accident, and that plaintiff's alleged fibromyalgia and myofascial pain syndrome are not causally related to her 16 December 2000 accident. These findings are binding on appeal, despite any evidence to the contrary. *Oliver*, 143 N.C. App. at 170, 544 S.E.2d at 608 (citation omitted).

These findings support the Commission's conclusion of law that "[p]laintiff has failed to prove that any continuing disability or inability to earn wages is related to her December 16, 2000 injury by accident." The Commission did not err in holding that plaintiff's fibromyalgia was not related to the 16 December 2000 compensable injury.

This argument is without merit.

AFFIRMED.

Judges HUNTER, Robert C., and McCULLOUGH concur.